**EXHIBIT 4**

DocuSign Envelope ID: 4D24E796-4C9F-4EE3-845F-62CE65817564

William M. Fischbach, SBN 019769
Elliot C. Stratton SBN 034025

**TB  TIFFANY & BOSCO**
P.A.

SEVENTH FLOOR CAMELBACK ESPLANADE II
2525 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-4237
TELEPHONE: (602) 255-6000
FACSIMILE: (602) 255-0103
EMAIL: wmf@tblaw.com; ecs@tblaw.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Peter Kuhn, | Case No. 23-00222-PHX-SRB |
| Plaintiff, | |
| vs. | **DECLARATION OF PETER KUHN** |
| Three Bell Capital, LLC, a California Limited Liability Company; Jonathan Porter, a Married Man; | |
| Defendants. | |

I, Peter Kuhn, declare as follows:

1.      I am the plaintiff in the above entitled cause of action.

2.      I am over the age of 18 and I make this declaration upon my personal knowledge.

3.      I am an Arizona resident.

4.      I first met Jonathan Porter in California in late 2019 at dinner with Mark Parelius, Ron Filice, and another member of the Three Bell Capital, LLC team.

5.      On February 25, 2020, Porter sent me an unsolicited e-mail recommending that I invest in "FTM Medical Accounts Receivable Litigation Finance Fund." *See* Exhibit 1.

6.      Based on Porter's advice, I agreed to invest $200,000.

1

7.      In a February 25, 2020 e-mail to me, Porter stated, "thanks for moving quickly on this.  It is normally very difficult to get into this fund, and I'm excited to have gotten you… into it."  *See* Exhibit 2.

8.      In furtherance of the investment, on February 25, 2020, Marley Dickson at Three Bell asked me to "open a TD Ameritrade account under Three Bell's management."  *See* Exhibit 2.

9.      To that end, Dickson forward me a link to create a Three Bell client web-profile.  *See* Exhibit 2.

10.     As requested, I created the web-profile, which set forth my Arizona address.

11.     Dickson also requested a copy of my driver's license, which I provided on February 26, 2020, and which also reflects my Arizona address.  *See* Exhibit 2 and Exhibit 3.

12.     On February 26, 2020, Dickson e-mailed me various forms for execution via DocuSign, including a W-9 as well as a Subscription Booklet.  *See* Exhibit 4.

13.     I signed the documents, designating an Arizona address and/or tax residency on each of them.

14.     In or around July 2020, Porter solicited me and another investor, Mark Parelius, to move our respective investments from the existing fund (which Porter referred to as FTM) to a new fund (which Porter referred to as MRLF).  *See* Exhibit 5.

15.     Parelius and I agreed to the move.  *See* Exhibit 5.

16.     Porter advised us:

> We have been waiting for HedgeAct to produce the paperwork necessary to effectuate the switch from FTM to MRLF.  Part of that delay was that we were insistent that our investors not be subject to a new liquidity clock by switching into the new fund.  We also had to negotiate out some provisions….  That paperwork is now complete and we are preparing it for 8/1 switchover, for both you and Mark.  Thanks for your patience, as we waited for HedgeAct to produce the requisite materials.

*See* Exhibit 5.

DocuSign Envelope ID: 4D24E796-4C9F-4EE3-B45E-62CE65917564

17. On July 20, 2020, Porter advised Parelius and I that the transfers to MRLF could not occur simultaneously, but staggered instead, with the first on August 1, 2020 and the second on September 1, 2020. *See* Exhibit 6.

18. We agreed that Three Bell would effectuate the Parelius transfer first, with me to follow. *See* Exhibit 6.

19. It is my understanding that Three Bell documented and facilitated the move of Parelius's funds as promised, and Parelius realized significant gains.

20. Porter stopped communicating with me concerning the transfer of my investment.

21. I believe Porter had himself invested in FTM and had become aware of its looming financial troubles in mid-2020, but failed to disclose this me. For example, FTM declared its largest borrower Infinity Capital Management, Inc. ("Infinity") in default on July 5, 2020. *See* Exhibit 7. Had Porter made me aware of these issues, I could have sought to withdraw my FTM investment altogether rather than simply await Porter to transfer the funds.

22. When the September 1, 2020 conversion deadline lapsed with no word from Three Bell, I followed up with Porter. *See* Exhibit 8.

23. Porter and Three Bell never effectuated the transfer of my investment from FTM to MRLF as promised.

I declare under penalty and perjury of the laws of the State of Arizona that the foregoing is true and correct and that this Declaration is executed by me on March 27, 2023.

Peter kuhn

Peter Kuhn

3

**DocuSign**

## Certificate Of Completion

Envelope Id: 4D24E7964C0F4EE3B15E62CE6F917564                          Status: Completed
Subject: Complete with DocuSign: Declaration - P. Kuhn.pdf
Source Envelope:
Document Pages: 3                    Signatures: 1                     Envelope Originator:
Certificate Pages: 1                 Initials: 0                       Kim Lehman
AutoNav: Enabled                                                       2525 E Camelback Rd, 7th Floor
EnvelopeId Stamping: Enabled                                          Phoenix, AZ  85016
Time Zone: (UTC-07:00) Arizona                                        kslehman@tblaw.com
                                                                      IP Address: 68.224.215.50

## Record Tracking

Status: Original                     Holder: Kim Lehman               Location: DocuSign
         3/27/2023 7:45:25 PM                 kslehman@tblaw.com

| Signer Events | Signature | Timestamp |
|---|---|---|
| Peter Kuhn<br>pkuhn@vantreo.com<br>Security Level: Email, Account Authentication (None) | *Peter kuhn*<br>DocuSigned by:<br>591CBCC26CF0466... | Sent: 3/27/2023 7:46:19 PM<br>Viewed: 3/27/2023 7:46:57 PM<br>Signed: 3/27/2023 7:49:01 PM |
| | Signature Adoption: Pre-selected Style<br>Using IP Address: 174.74.189.120<br>Signed using mobile | |
| **Electronic Record and Signature Disclosure:**<br>    Not Offered via DocuSign | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 3/27/2023 7:46:19 PM |
| Certified Delivered | Security Checked | 3/27/2023 7:46:57 PM |
| Signing Complete | Security Checked | 3/27/2023 7:49:01 PM |
| Completed | Security Checked | 3/27/2023 7:49:01 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

# EXHIBIT 1

| | |
|---|---|
| **From:** | Peter Kuhn |
| **To:** | Amy D. Sells |
| **Subject:** | FW: Time Sensitive: FTM Accounts Receivables Litigation Fund ($900K capacity) |
| **Date:** | Wednesday, March 22, 2023 5:45:40 PM |

**From:** Jon Porter <jon@three-bell.com>
**Sent:** Tuesday, February 25, 2020 12:51 PM
**To:** Ron Filice <ron@filice.com>; Mark Parelius <mark@parelius.com>; Peter Kuhn <peter@ibpis.com>
**Cc:** Eric Patterson <eric@three-bell.com>
**Subject:** Time Sensitive: FTM Accounts Receivables Litigation Fund ($900K capacity)

Good afternoon gents,

We have another investment for you three to collectively consider.  This is time sensitive for two reasons:

1) capacity into this fund is usually incredibly constrained (we've had some clients waiting to get into this fund for months), this capacity just opened up (total of $900K), and could be taken by other investors at any time, and

2) we have to move today or tomorrow at the latest if we want to hit the 3/1 deployment which is where the capacity exists.  I apologize for the exigency, but it is what it is, and Eric and I are both available to discuss throughout the day today/tomorrow.

We are showing this to you because its expected annual yield is in the mid-teens (see below link), and according to our CPA contacts, the income produced is all passive, which means you can cleanse it with the tax credits (AKA depreciation) you have banked from your Dollar General properties.

In other words, if what you shared with Eric and I at dinner still holds true, and you have more depreciation banked than passive income to offset it, all of this fund's return is going to be tax-free income for you.  Moreover, any passive losses you incurred in the Dollar General investments, could also be used to offset the passive income of this investment.

The fund is called FTM Medical Accounts Receivable Litigation Finance Fund.  The fund is updating their materials as we speak, but in a nutshell, as its name suggests, it's a medical accounts receivables litigation fund.  The premise is that collections agencies that work with medical care providers, buy the accounts receivables of said medical care providers for pennies on the dollar, and then attempt to recover the debts.

They partially fund those efforts with a line of credit, which is essentially a fund comprised of limited partners' capital.  The collections agencies draw on the line of credit at an interest rate that creates net income in the mid teens.  Although tangentially related, their success or failure in their recovery does not directly impact the line of credit interest paid to LP's.  We invest our clients' capital into the

line of credit.

From a risk perspective, it's not tied to the stock market at all.  It's a line of credit drawn on by collections companies that have been working in this industry for quite some time.  So, the most plausible risk is that the collections companies don't need to draw on the line of credit, and as such, there is a cash drag in the fund that backstops the line of credit.  In this eventuality, you wouldn't necessarily see the fund go negative, you would simply see the returns reduced.

Please let us know right away if this is something you wish to pursue, and we can schedule a call to discuss.

Thanks guys!

--Jon



**Jon Porter**

**CEO** at **THREE BELL CAPITAL**

4 Main Street, Suite 230, Los Altos, CA 94022

(650) 843-9836

jon@three-bell.com   **www.three-bell.com**

*Public Securities Offered Through KW Securities Corporation, Member FINRA/SIPC*

# EXHIBIT 2

| From: | Marley Dickson |
|---|---|
| To: | Peter Kuhn |
| Cc: | Jon Porter |
| Subject: | Re: Operational Next Steps for FTM Investment |
| Date: | Tuesday, February 25, 2020 6:18:17 PM |

Hi Peter,

I hope you're doing well! Outlined below are the items I need from you to open a TD Ameritrade account under Three Bell's management and invest into FTM Medical Receivables.

Additionally, were you planning to make this investment as an individual or through a personal trust? Please let me know as there are extra items if you are investing through a personal trust.

**Client Profile**
- Please click here to fill out our client profile.

**Driver's License and Passport**
- Please provide a clear copy or picture of both your driver's license and passport.

Once the above items are completed, I will proceed with sending you a TD Ameritrade application and the subscription documents for FTM Medical Receivables. Please let me know if you have any questions!

Thanks!
Marley

On Tue, Feb 25, 2020 at 5:12 PM Jon Porter <jon@three-bell.com> wrote:

Peter,

Per my earlier email, please meet our Operations Associate, Marley (cc'd) who will help facilitate the FTM investment and associated account opening and client profile.

Again, thanks for moving quickly on this.  It is normally very difficult to get into this fund, and I'm excited to have gotten you, Mark and Ronnie into it.

I will remain in the loop as we get the investment made, but Marley is in the driver's seat and is a very capable driver.  :)

Best,

--Jon

**Jon Porter**
CEO at **THREE BELL CAPITAL**

4 Main Street, Suite 230, Los Altos, CA 94022

(650) 843-9836

jon@three-bell.com  www.three-bell.com



*Public Securities Offered Through KW Securities Corporation, Member FINRA/SIPC*

--

## Marley Dickson

Operations Associate at **Three Bell Capital**

A 4 Main Street, Suite 230, Los Altos, CA 94022

P (281) 682.6858

E marley@three-bell.com  W www.three-bell.com

# EXHIBIT 3

**From:**        Peter Kuhn
**To:**          Amy D. Sells
**Subject:**     FW: Kuhn info
**Date:**        Wednesday, March 22, 2023 5:44:26 PM
**Attachments:** IMG_4468.jpg
                 ATT00001.txt
                 IMG_4467.jpg
                 ATT00002.txt

-----Original Message-----
From: Peter Kuhn <peter@ibpis.com>
Sent: Wednesday, February 26, 2020 2:59 PM
To: Marley Dickson <marley@three-bell.com>
Subject: Kuhn info



SIGNATURE OF BEARER / SIGNATURE DU TITULAIRE / FIRMA DEL TITULAR

3

PASSPORT
PASSEPORT
PASAPORTE

USA

# UNITED STATES OF AMERICA

Type / Type / Tipo   Code / Code / Código   Passport No / No. du Passeport / No. de Pasaporte

P   USA   

Surname / Nom / Apellidos

**KUHN**

Given Names / Prénoms / Nombres

**PETER VINCENT**

Nationality / Nationalité / Nacionalidad

**UNITED STATES OF AMERICA**

Date of birth / Date de naissance / Fecha de nacimiento

Place of birth / Lieu de naissance / Lugar de nacimiento

**NEW YORK, U.S.A.**

Date of issue / Date de délivrance / Fecha de expedición

**04 Nov 2019**

Date of expiration / Date d'expiration / Fecha de caducidad

**03 Nov 2029**

Endorsements / Mentions Spéciales / Anotaciones

**SEE PAGE 27**

Sex / Sexe / Sexo

**M**

Authority / Autorité / Autoridad

**United States
Department of State**

USA

P<USAKUHN<<PETER<VINCENT<<<<<<<<<<<<<<<<<<<<<
6466570462USA6012203M2911032681262678<187446

# EXHIBIT 4

| | |
|---|---|
| **From:** | Marley Dickson |
| **To:** | Peter Kuhn |
| **Cc:** | Jon Porter |
| **Subject:** | FTM Medical Receivables Investment |
| **Date:** | Wednesday, February 26, 2020 6:53:07 PM |

Hi Peter,

Outlined below are the next steps for your FTM Medical Receivables investment. Please let me know if you have any questions!

**<u>FTM Medical Receivables Subscription Document</u>**
- Sent via DocuSign.

**<u>Form W-9</u>**
- Sent via DocuSign with the subscription document.

Thanks,
Marley
--
## Marley Dickson

Operations Associate at **Three Bell Capital**

A 4 Main Street, Suite 230, Los Altos, CA 94022

P (281) 682.6858

E marley@three-bell.com  W www.three-bell.com



# EXHIBIT 5

| | |
|---|---|
| **From:** | Peter Kuhn |
| **To:** | Jon Porter |
| **Cc:** | Mark Parelius ; Ron Filice |
| **Subject:** | Re: HASelect - Medical Receivables Litigation Finance Funds March Fact Sheet |

Thank you.

Peter Kuhn
Office 408-363-6004
Cell 408-221-3762
Sent from my iPhone

On Jul 17, 2020, at 2:59 PM, Jon Porter <jon@three-bell.com> wrote:

Yessir. You will receive two sets of docs: one for a full redemption from FTM, and the other for a subscription into MRLF. They are being prepped as we speak and hopefully we will be able to combine both into a single DocuSign...

**Jon Porter**, CEO
Three Bell Capital LLC
Office 650.887.7203 | Mobile 650.862.4757
Email Jon@three-bell.com

Silicon Valley | New York | San Francisco | Los Angeles | Charlotte

On Jul 17, 2020, at 9:55 AM, Peter Kuhn <peter@ibpis.com> wrote:

Thanks.

Peter Kuhn
Office 408-363-6004
Cell 408-221-3762
Sent from my iPhone

On Jul 17, 2020, at 9:43 AM, Jon Porter <jon@three-bell.com> wrote:

Hi Peter,

Mark's latest email is spot on. We have been waiting for HedgeAct to produce the paperwork necessary to effectuate the switch from FTM to MRLF. Part of that delay was that we were insistent that our investors not be subject to a new liquidity clock by switching into the new fund. We also had to negotiate out some provisions, like Medallion signature guarantees, that were frankly unreasonable. That paperwork is now complete and we are preparing it for 8/1 switchover, for both you and Mark. Thanks for your patience, as we waited for HedgeAct to produce the requisite materials.

Ronnie you are not presently in either fund. If you'd like a primer on the fund, a refresher course if you will, just let me know. There is about $500K in capacity for 8/1 in the new MRLF fund, which will likely go quickly. Zero pressure.

Happy Friday guys!

--Jon



**Jon Porter**
CEO at **THREE BELL CAPITAL**

4 Main Street, Suite 230, Los Altos, CA 94022
(650) 887-7203  jon@three-bell.com

On Fri, Jul 17, 2020 at 6:17 AM Peter Kuhn <peter@ibpis.com> wrote:

Did we get our funds moved over to fund 2 with the higher returns and more diverse base of borrowers?

Peter Kuhn
Office 408-363-6004
Cell 408-221-3762
Sent from my iPhone

> On Jun 25, 2020, at 4:58 PM, Jon Porter <jon@three-bell.com> wrote:
>
> Exactly correct, and we want to.  I am head down today and tomorrow speaking with clients about the 15% structured note I sent to you guys yesterday.  Can we chat about this transition on Monday or Tuesday of next week?



**Jon Porter**
CEO at **THREE BELL CAPITAL**

4 Main Street, Suite 230, Los Altos, CA 94022
(650) 887-7203  jon@three-bell.com

> On Thu, Jun 25, 2020 at 9:24 AM Peter Kuhn <peter@ibpis.com> wrote:
> I talked with Mark and he indicated we can move from fund 1 to fund 2 I am interested. Let's discuss.
>
> Peter Kuhn
> Office 408-363-6004
> Cell 408-221-3762
> Sent from my iPhone
>
>> On May 28, 2020, at 12:11 PM, Jon Porter <jon@three-bell.com> wrote:
>>
>>  Your email actually helped considerably, Peter.  We used it as the basis to push the CPA's, who pushed the lawyers, who acquiesced to the change we requested.
>>
>> Your consulting bill will be covered in full at the next Forbes dinner! :)
>>
>> Jon
>>
>> **Jon Porter**, CEO
>> Three Bell Capital LLC
>> Office 650.887.7203  |  Mobile 650.862.4757
>> Email Jon@three-bell.com
>>
>> Silicon Valley  |  New York  |  San Francisco  |  Los Angeles  |  Charlotte
>>
>>> On May 28, 2020, at 9:03 AM, Peter Kuhn <peter@ibpis.com> wrote:
>>>
>>>  I felt it should have been in box 1 all along!
>>>
>>> Where should I send my consulting bill?
>>>
>>> Peter Kuhn
>>> Office 408-363-6004
>>> Cell 408-221-3762
>>> Sent from my iPhone

On May 28, 2020, at 8:55 AM, Jon Porter
<jon@three-bell.com> wrote:

Hi guys, great news:  we were able to get a legal
opinion that authorized the income from FTM to
be placed into box 1 of the K-1, and they will be
reflected as such from here on out.

Best,

Jon

**Jon Porter**, CEO
Three Bell Capital LLC
Office 650.887.7203  |  Mobile 650.862.4757
Email Jon@three-bell.com

Silicon Valley  |  New York  |  San Francisco  |
Los Angeles  |  Charlotte

On May 26, 2020, at 4:38 PM, Jon
Porter <jon@three-bell.com> wrote:

Hi Peter,

Just sent to you under separate
cover.  We have a lot of control over
this particular fund, as it is a sidecar
fund to the main fund specifically for
our clients.  It also has lower fees. :)

--Jon

 **Jon Porter**
CEO at **THREE BELL CAPITAL**

4 Main Street, Suite 230, Los Altos, CA 94022
(650) 887-7203  jon@three-bell.com



On Tue, May 26, 2020 at 2:39 PM
Peter Kuhn <peter@ibpis.com>
wrote:
Please send mobile home park
info. I have looked at a few in the
past.

Peter Kuhn
Office 408-363-6004
Cell 408-221-3762
Sent from my iPhone

On May 26, 2020, at
2:34 PM, Jon Porter
<jon@three-bell.com>
wrote:

Hi Peter,

Hot off the press and
attached.  The fund

was up 1.09% net in April, up appx. 4% on the year.

I did confirm that at present, the income from the fund is passive and thus *not* in the K-1 box that would allow you to offset it with the tax credits you have from the Dollar General investments.  Pre-C19, I had asked the fund manager if they could check with their accountants and determine if there was a way to change the income categorization such that it *could* be offset, and I did not hear back on that front.  I will check in again with them now.  I suspect they were simply focused on other things while C19 was crushing the equity markets.

We do have another investment that does kick off tax free (netted against depreciation) income, in a mobile home park fund.  Please let me know if you would like me to send you the investment summary.  It's very unique, but definitely additional exposure to real estate.

Best,

--Jon



**Jon Porter**
CEO at **THREE BELL CAPITAL**

4 Main Street, Suite 230, Los Altos, CA 94022
(650) 887-7203  jon@three-bell.com

On Thu, May 14, 2020 at 11:42 AM Peter Kuhn <peter@ibpis.com> wrote:

  HI Jon  -

Touching base if you have the April returns for this investment.


Peter Kuhn

CEO & Principal, IBP Insurance Services

email
peter@ibpis.com

175 Bernal Road Suite 100

San Jose, CA 95119


Tel 408-363-6004

Cell 408-221-3762


<image001.jpg>


<image002.png>


**From:** Jon Porter
<jon@three-bell.com>
**Sent:** Wednesday, April 15, 2020 11:39 AM
**To:** Mark Parelius
<mark@parelius.com>;
Peter Kuhn
<peter@ibpis.com>
**Cc:** Ron Filice
<ron@filice.com>
**Subject:** Fwd: HASelect - Medical Receivables Litigation Finance Funds March Fact Sheet


Gents,


Biggest stress test in history and this fund returned +2.13% in March.  That my friends is called a victory.


Peter, in answer to your question, the income from the fund is

currency categorized as passive.  I have asked the fund manager if they can change the character of the income to active, and they were working on that prior to Covid 19 setting in and changing the world.  I will follow up with them today and see if we can get the ball rolling again.

Ronny, this would be a good one to deploy into when you're ready.

Best,

--Jon

**Jon Porter**
CEO at THREE BELL CAPITAL



4 Main Street, Suite 230, Los Altos, CA 94022
(650) 843-9836
jon@three-bell.com  www.three-bell.com



*Public Securities Offered Through KW Securities Corporation, Member FINRA/SIPC*

---------- Forwarded message ---------
From: **James Gallagher** <jamesg@hedgeact.com>
Date: Wed, Apr 15, 2020 at 8:11 AM
Subject: HASelect - Medical Receivables Litigation Finance Funds March Fact Sheet
To: Jon Porter <jon@three-bell.com>

Dear Investors and Friends,

We are pleased to inform you that the recently launched US domestic HASelect - Medical Receivables Litigation Finance Fund LLC returned **2.13% in March** and the offshore HASelect - FTM Medical Receivables Litigation Finance Fund SP returned **1.07% in March, 3.36% YTD**.

Regards,

James

 --

James Gallagher, CAIA

HedgeACT

Griffin Capital Mgt.

Griffin Asset Management

P: +1 (773) 416-2686





This email and any file attachments are intended solely for the use of the individual or entity to whom they are addressed.  If you have received this email in error, please notify the sender and delete the email from your system.  If you are not the intended recipient, any disclosure, copying, distribution, or use of the contents of this information is prohibited. This email and any file attachments should be scanned for viruses by the recipient as HedgeACT accepts no liability for any damage caused by any virus transmitted by

this email. HedgeACT reserves the right to monitor, record and retain all electronic communications for record keeping and regulatory purposes. This email and any file attachments are for informational purposes only and are not intended to be relied on as legal, tax or financial planning advice.This email and any file attachments are not intended as an offer or solicitation for the purchase or sale of any financial instrument. Private offerings can only be made to qualified eligible investors and only through execution of the Fund's confidential offering documents.

&lt;HASelect - FTM Medical Receivables Litigation Finance Fund SP Fact Sheet Apr 2020.pdf&gt;

# EXHIBIT 6

**From:**      Jon Porter
**To:**        Peter Kuhn
**Cc:**        Mark Parelius; Marley Agatha
**Subject:**   Re: FTM to MRLF
**Date:**      Tuesday, July 21, 2020 8:16:55 AM

Roger that.  Very good of you, Peter.  You are first in line for 9/1 conversion.

Marley, can you please send Mark the requisite paperwork for conversion?

Thank you!

--Jon



**Jon Porter**
CEO at **THREE BELL CAPITAL**

4 Main Street, Suite 230, Los Altos, CA 94022
(650) 887-7203  jon@three-bell.com

On Mon, Jul 20, 2020 at 9:16 PM Peter Kuhn <peter@ibpis.com> wrote:
> Let mark take it.
>
> Peter Kuhn
> Office 408-363-6004
> Cell 408-221-3762
> Sent from my iPhone
>
>> On Jul 20, 2020, at 8:34 PM, Jon Porter <jon@three-bell.com> wrote:
>>
>>
>> I would love to do that, but you can't.  That's what I was trying to convey with my
>> last email..



**Jon Porter**
CEO at **THREE BELL CAPITAL**

4 Main Street, Suite 230, Los Altos, CA 94022
(650) 887-7203  jon@three-bell.com



On Mon, Jul 20, 2020 at 1:53 PM Peter Kuhn <peter@ibpis.com> wrote:
Split is good.

Peter Kuhn
Office 408-363-6004
Cell 408-221-3762
Sent from my iPhone

On Jul 20, 2020, at 12:59 PM, Jon Porter <jon@three-bell.com> wrote:

Correct, I asked.

 **Jon Porter**
CEO at **THREE BELL CAPITAL**

4 Main Street, Suite 230, Los Altos, CA 94022

(650) 887-7203   jon@three-bell.com



On Mon, Jul 20, 2020 at 12:55 PM Mark Parelius <mark@parelius.com> wrote:
Guessing we can't split it

Peter...thoughts...

Thank you,
Mark Parelius
President
Parelius Insurance Services
Please excuse any errors - Get Outlook for iOS

**From:** Jon Porter <jon@three-bell.com>
**Sent:** Monday, July 20, 2020 12:52:09 PM

**To:** Peter Kuhn <peter@ibpis.com>; Mark Parelius
<mark@parelius.com>
**Subject:** FTM to MRLF

Gents,

The fund manager just informed me that there is only enough
capacity in MRLF to accommodate one of you switching from
FTM to MRLF on 8/1.  The other will have to be processed 9/1.

Ordinarily I would just make the call and disappoint one person,
but since you are such good friends, and both asked me to switch
at functionally the same time, I wanted to ask who I should put in
for 8/1 vs. 9/1.  Functionally, we're likely talking about a
difference of 0.50%- 1% for the missed month.

Please advise...

Thanks,

--Jon



**Jon Porter**
**CEO** at **THREE BELL CAPITAL**

4 Main Street, Suite 230, Los Altos, CA 94022
(650) 887-7203   jon@three-bell.com



# EXHIBIT 7

**SAUL EWING**

**ARNSTEIN**

**& LEHR** LLP

Michael L. Gesas

Phone: 312.876.7125

Michael.gesas@saul.com

www.saul.com

July 5, 2020

<u>**Via Email Correspondence:**</u>
Mr. Larry C. Oldham, Esq.
Larry C. Oldham, P.C.
416 Pirkle Ferry Road, Suite K-500
Cumming, Georgia  30040
larryoldham@lcopc.com

      Re:    **HASelect-FTM Medical Receivables Litigation Finance Fund SP / Infinity Capital Management, Inc.**

Dear Larry:

      As you know Saul Ewing Arnstein & Lehr LLP represents HASelect-FTM Medical Receivables Litigation Finance Fund SP ("Lender") in connection with Infinity Capital Management, Inc.'s ("Borrower") breach of the Amended Loan and Security Agreement dated December 18, 2019 and Promissory Note dated December 18, 2019 (the "Loan Documents"). Borrower is currently in breach of the Loan Documents and has failed to substantively respond to this firm's correspondence dated, June 11, 2020 (the "Demand Letter").

      During our telephone call several weeks ago and per your most recent email correspondence, you advised that your client was putting together a "reasonable game plan" and was going to provide us with some possible "deal points" on how to resolve the current dispute. Notwithstanding this, to date we have not received any substantive proposal from your client.

      As you know, time is of the essence and your client's refusal to substantively respond to our client's reasonable requests for documents and information as provided under the Loan Documents is unacceptable.  Be advised that we have been instructed to file a complaint seeking to enforce our client's rights under the Loan Documents in the United States District Court for the Norther District of Illinois by July 6, 2020, absent some mutually acceptable Forbearance Agreement.  As a professional courtesy, a copy of the draft complaint and our draft notice of our Article 9 Public Sale  is attached.

161 North Clark ◆ Suite 4200 ◆ Chicago, IL 60601
Phone: (312) 876-7100 ◆ Fax: (312) 876-0288

DELAWARE  FLORIDA  ILLINOIS  MARYLAND  MASSACHUSETTS  NEW JERSEY  NEW YORK  PENNSYLVANIA  WASHINGTON, DC
A DELAWARE LIMITED LIABILITY PARTNERSHIP

37167794.1.docx

Mr. Larry C. Oldham
July 5, 2020
Page 2

If your client is truly interested in resolving these outstanding issues, we ask that they respond to the following inquiries and produce the requested documents before July 8, 2020.

1.  Advise when Infinity will provide the required audited financial statements as required under the loan documents.  Based on your client's prior representations, these statements were to be completed by mid-July.  In the meantime, please provide Infinity's unaudited financial statements as provided to Infinity's auditor;

2.  Advise who Infinity selected to audit it financial statements.  As you know our client has raised concerns regarding your client's selection on an appropriate auditor.  Please provide a copy of the engagement letter;

3.  Advise of the current estimated value of the collateral in light of collections;

4.  Advise of Infinity's current available cash to reduce outstanding debt;

5.  Advise of Infinity's current working capital requirements;

6.  Advise of Infinity's specific plan to pay off our client's debt and within what time period;

7.  Confirm that the HedgeACT stamped liens have been provided to all attorneys;

8.  Advise what funds have been raised by Tecumseh-Infinity;

9.  Provide copies of all FTM notes and the related payment history; and

10. Provide copies of Infinity's bank account statements;

Should your client refuse these reasonable requests required pursuant to the terms and covenants in the loan facility, our client is prepared to move forward and file the attached complaint and any other necessary related litigation.  We appreciate your prompt attention to this correspondence and the requests presented herein.

Finally, be advised that Lender is prepared to enforce all of its rights and remedies under Illinois law and nothing in this correspondence is intended, nor shall it be interpreted to modify, limit, release, reduce, or waive any of Lender's rights or remedies under the Loan Documents, or at law or in equity, all of which are hereby specifically reserved.

Very truly yours,

Michael L. Gesas

Cc:   Mr. Michael E. Griffin.
      Ms. Debra Griffin
      Mr. Christopher S. Naveja, Esq.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND SP, formally known as HASELECT-FTM MEDICAL RECEIVABLES LITIGATION FINANCE FUND SP, a Cayman Islands corporation, | ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) | |
| INFINITY CAPITAL MANAGEMENT, INC. a Nevada corporation, | ) ) ) | |
| Defendant. | ) ) | |

## COMPLAINT

Plaintiff HASelect-Medical Receivables Litigation Finance Fund International SP, formally known as HASelect-FTM Medical Receivables Litigation Finance Fund SP ("Plaintiff or "Lender"), by its attorneys, Michael L. Gesas and Christopher S. Naveja of Saul Ewing Arnstein & Lehr LLP, bring the following Complaint against Defendant Infinity Capital Management, Inc. ("Defendant" or "Borrower"), as follows:

## Parties

1.     Plaintiff is a segregated portfolio company of HedgeACT International SPC Ltd., an exempted company incorporated under the laws of the Cayman Islands corporation with its principal place of business located at 403 South La Grange Road, La Grange, Illinois.

2.     For purposes of diversity, Plaintiff is a citizen of the Cayman Islands and the State of Illinois.

37157312.2.doc

3.      Defendant is a Nevada corporation with its principal place of business located at 1700 W Horizon Ridge Pkwy, #206, Henderson, Nevada.

4.      For purposes of diversity, Defendant is a citizen of the state of Nevada.

## Jurisdiction and Venue

5.      This Court has subject matter jurisdiction through diversity of citizenship pursuant to 28 U.S.C. § 1332.

6.      Plaintiff and Defendant (collectively the "Parties") are completely diverse because Plaintiff is a citizen of the Cayman Islands and the State of Illinois and Defendant is a citizen of the states of Nevada.

7.      The amount in controversy exceeds $75,000, as the amount currently due under the Loan Documents (defined below) is $14,543,824, plus interest, attorney's fees and costs.

8.      The Court has personal jurisdiction over Plaintiff because it is a foreign entity authorized to transact business within the state of Illinois, and regularly conducts business within this district.

9.      The Court has personal jurisdiction over Defendant because it is a foreign entity authorized to transact business within the state of Illinois, and conducted business within this district.

10.     Venue is proper pursuant to 28 U.S.C. § 1391 because this action is founded on diversity, the Loan Documents that are the subject of this action were negotiated and executed within this district.

11.     Additionally, pursuant to the Loan Agreement (defined below), the Parties agreed as follows:

[t]his Agreement and all acts and transactions hereunder and all rights and obligations of Lender and Borrower shall be governed by the laws of the State of

2

37157312.2.doc

Illinois. Each party (a) agrees that all actions and proceedings relating directly or indirectly to this Agreement shall be litigated in courts located within Illinois; (b) consents to the jurisdiction and venue of any such court and consents to service of process in any such action or proceeding by personal delivery or any other method permitted by law; and (c) waives any and all rights it may have to object to the jurisdiction of any such court, or to transfer or change the venue of any such action or proceeding.

(See Loan Agreement attached hereto as Exhibit 1, Section 9.1)

## Factual Background

12.     Plaintiff is a medical receivables investment fund which loans monies to various borrowers for purposes of financing litigation.

13.     Defendant operates a financial services business, which includes the purchase of receivables from medical providers that are subject to personal injury claims.

14.     Plaintiff loaned Defendant funds to purchase the aforementioned receivables from medical providers.

15.     Plaintiff and Defendant entered into that Loan and Security Agreement dated February 26, 2019 (the "Original Agreement") in the maximum principal amount of $5,000,000 (the "Original Loan"), and in connection with the Original Agreement, Defendant issued to Plaintiff that Promissory Note dated February 26, 2019 (the "Original Note")

16.     Plaintiff and Defendant entered into that Amendment 1 Loan and Security Agreement dated July 23, 2019 (the "Amendment") in the maximum principal amount of $1,000,000 (the "Amendment Loan"), and in connection with the Amendment, Defendant issued to Plaintiff that Promissory Note dated July 23, 2019 (the "Amendment Note").

17.     Plaintiff and Defendant entered into that First Amended & Restated Loan and Security Agreement dated August 30, 2019 (the "First Amendment") in the maximum principal amount of $15,000,000 (the "First Amendment Loan"), and in connection with the Amendment,

3

Defendant issued to Plaintiff that Promissory Note dated August 30, 2019 (the "First Amendment Note").

18.     Plaintiff and Defendant entered into that Amendment 1 to First Amended & Restated Loan and Security Agreement dated November 7, 2019 (the "Amendment 2") in the maximum principal amount of $1,000,000 (the "Amendment 2 Loan"), and in connection with Amendment 2, Defendant issued to Plaintiff that Promissory Note dated November 7, 2019 (the "Amendment 2 Note").

19.     Defendant thereafter applied to Plaintiff to increase the size of the revolving loan under the Original Agreement, the Amendment, the First Amendment and Amendment 2, and Plaintiff agreed to make such revolving loan upon the terms and conditions hereinafter set forth.

20.     Defendant applied to Plaintiff to advance funds to Defendant during the first 20 days of a given month, preceding Defendant's standard monthly Advances (each an "Intermediate Advance"); and to advance funds to Defendant in connection with Receivables not having liens executed in favor of Defendant (the "Alternative Receivables").

21.     Plaintiff agreed to make Intermediate Advances, each in an amount up to 20% of the monthly standard Advance and not to exceed $600,000 in the aggregate, in exchange for payment by Defendant of a fee in the amount of 0.25% of each such Intermediate Advance.

22.     Plaintiff further agreed to advance funds to Defendant in connection with Alternative Receivables.

23.     The Parties agreed to consolidate the terms of the Original Agreement, the Amendment, the First Amendment and Amendment 2 (collectively, the "Prior Agreements"), and to reflect other changes to the terms of the Loan entered into the Second Amended & Restated Loan Agreement and Security Agreement dated December 18, 2019 ("Loan Agreement").

4

24.     The Parties' current lending relationship is governed by the Loan Agreement evidencing certain revolving loans (collectively the "Loan") in the maximum principal amount of Thirty Million and 00/100 Dollars ($30,000,000.00).   A true and correct copy of the Loan Agreement is attached hereto as Exhibit 1.

25.     Pursuant to the terms and conditions of the Loan Agreement, Plaintiff agreed to increase the size of the loans represented by the Original Loan, the Amendment Loan, the First Amendment Loan and the Amendment 2 Loan to Defendant as a revolving loan in the maximum principal amount of THIRTY MILLION AND 00/100 DOLLARS ($30,000,000.00).

26.     The Loan is evidenced by the Loan Agreement and a Promissory Note dated December 18, 2019 (the "Note," and together with the Loan Agreement, collectively, the "Loan Documents").  A true and correct copy of the Note is attached hereto as Exhibit 2.

27.     The Loan is secured by that certain Collateral defined in Section 4.1 of the Loan Agreement, and the Receivables and Claims as provided in the Note and as identified and defined in the Loan Agreement (collectively, the "Collateral").

28.     Pursuant to the Loan Documents, Defendant granted a security interest in:

> . . . the Receivables and the Alternative Receivables, and all of its other personal property, including without limitation, all of Borrower's interest in the following, whether now owned or hereafter acquired, and wherever located, but excluding the Permitted Liens: All Goods, Inventory, Equipment, Fixtures, Accounts, General Intangibles, Instruments, Chattel Paper, Documents, Commercial Tort Claims, Investment Property, Letter of Credit Rights, Deposit Accounts, and all money, and all other property now or at any time in the future in Lender's possession (including claims and credit balances), and all proceeds (including proceeds of any insurance policies, proceeds of proceeds and claims against third parties), all products and all books and records related to any of the foregoing (all of the foregoing, together with all other property in which Lender may now or in the future be granted a lien or security interest, is referred to herein, collectively, as the "Collateral")

> (Exhibit 1, Section 4.1)

29.     The Loan Agreement and Note further provide that:

> [t]he outstanding principal balance of the Note shall bear interest at the following rates: (a) with respect to each Advance (including Intermediate Advances but excluding Alternative Receivable Advances), a rate of (i) (I) during the period that began on the date of the first Advance under the Original Agreement and continuing for six months, twentyone percent (21 %) per annum, (II) following such six-month period, nineteen percent (19%) per annum, plus (ii) six percent (6%) of the amount of such Advance; (b) with respect to each Alternative Receivable Advance, a rate of (i) twenty-two percent (22%) per annum, plus (ii) six percent (6%) of the amount of such Alternative Receivable Advance; and (c) any past due amounts of both principal and accrued and unpaid interest outstanding under the Note shall bear interest at thirty percent (30%) per annum. Such interest shall be computed on the basis of the actual number of days elapsed over a year of 360 days, consisting of twelve months of 30 days each month. . . .

(Exhibit 1, Section 1.6; and Exhibit 2, Paragraph 11)

30.     Defendant defaulted under the terms of the Loan Agreement and Note as more specifically set forth in below.

31.     <u>Plaintiff notified Defendant of certain "Events of Default" under the terms of the Loan Agreement and Note by a Notice of Default dated May 30, 2020</u> (the "Notice of Default"), as more fully set forth therein.  A true and correct copy of the Notice of Default is attached hereto as Exhibit 3.

32.     The Notice of Default advised Defendant (therein identified as Borrower) of a number of Events of Default, including the following:

   a.  Borrower's failure to furnish to Lender annual statements for the fiscal year ending 2019, no later than one hundred-twenty (120) days after the end of such fiscal year, consisting of Borrower's balance sheet and income statement for such year, audited by a certified public accountant reasonably satisfactory to Lender, as required by Section 6.2(1) of the Loan Agreement;

b.   Borrower's failure to furnish to Lender interim statements for the fiscal quarter ending March 31, 2020, no later than thirty (30) days after the end of such fiscal quarter, consisting of Borrower's balance sheet and profit and loss statement for such period, prepared by Borrower, as required by Section 6.2(2) of the Loan Agreement;

c.   Borrower's failure to furnish to Lender monthly reports for the calendar months December of 2019 and January, February, March, and April of 2020, within ten days of the end of such calendar months, consisting of a report of Borrower's outstanding indebtedness (other than that borrowed under the Loan Agreement) containing such detail as Lender shall reasonably require, as required by Section 6.2(3) of the Loan Agreement;

d.   Borrower's failure to submit to Lender financial reports that have been prepared in accordance with Accounting Principles (as defined in the Loan Agreement), and certified as by Borrower as being true and correct, as required by Section 5.7 of the Loan Agreement;

e.   Upon information and belief, Borrower has incurred indebtedness from another lender other than Lender, in violation of Section 7.4 of the Loan Agreement, which provides in relevant part:

> Without Lender's written consent (which consent will not be unreasonably withheld), Borrower shall not incur any indebtedness of any kind (including any further indebtedness associated with the Permitted Liens) from other than Lender after the Effective Date.

f.   Upon information and belief, Borrower has modified the payment terms and/or expiration dates of the FTM Notes (as defined in the Loan Agreement), in violation of Sections 7.3 and 7.4 of the Loan Agreement, and the definition of

7

"Permitted Liens" in the Loan Agreement, which definition provides in relevant part:

> "Permitted Liens" means those promissory notes made by Borrower in favor of FTM Limited, an investment company incorporated in Vanuatu as a Public Company under the laws of the Republic of Vanuatu (the "FTM Notes"), in the amount of $8,723,575.37 as of November 30, 2019, having the maturities as described on Schedule 1.

g.  Borrower's modification of the payment terms and/or expiration dates of the FTM Notes (as defined in the Loan Agreement) also constitutes a "change in the financial condition or in the assets or liabilities of the Borrower having a material adverse effect on the Borrower," in violation of Section 5.7 of the Loan Agreement.

h.  Borrower is, among other things, prohibited from engaging in any other business activities, or merging, transferring, acquiring, or consolidating with any other entity.  Sections 7.1(1) and 7.1(2) of the Loan Agreement prohibit Borrower's engagement in business activities with any other entities, including the Tecumseh-Infinity Fund.

(Exhibit 3, pp. 2-3)

33.  The Events of Default constitute a breach of Section 8.1(b) of the Loan Agreement and Section 14 of the Note, each of which provide in relevant part:

> (b) Borrower shall fail to comply, within fifteen days of receiving notice from Lender of such failure, with any of the covenants, financial or otherwise, set forth herein or shall fail to perform any other non-monetary obligation (provided that Borrower shall not be entitled to a cure period if Lender determines in good faith that such breach or default is not capable of being cured or is not capable of being cured within such 15-day period)

> (Exhibit 1, Section 8.1(b) and Exhibit 2, Paragraph 14)

8

34.     Plaintiff determined in good faith that the Events of Default are not capable of being cured or are not capable of being cured within the 15-day period referenced in Section 8.1(b) of the Loan Agreement, and therefore Defendant is not entitled to a cure period with respect to the Events of Default.

35.     By reason of the Events of Default, Plaintiff is entitled to pursue any one or more of the remedies set forth in Section 8.2 of the Loan Agreement and Section 15 of the Note, and may exercise any and all other remedies available under the Loan Documents, or as available at law or in equity.

36.     Pursuant to Section 8.2 of the Loan Agreement and Section 15 of the Note, Plaintiff declared all of the outstanding principal amount of the Loan and all unpaid interest and other sums due under the Loan Agreement and Note to be immediately due and payable.

37.     As of the date of the Notice of Default on May 30, 2020, the total of such sums was $14,414,292.00.  (See Exhibit 3, p. 3)

38.     The aforementioned Notice of Default, also requested Defendant to produce to Plaintiff certain documents and information as required under the Loan Agreement.

39.     Section 4.2(a) of the Loan Agreement provides in relevant part:

> Further Assurances.  Borrower shall, at Lender's request, at any time, and from time to time, authenticate, execute and deliver to Lender such financing statements, documents and other agreements and instruments and do such other acts and things or cause third parties to do such other acts and things as Lender may deem reasonably necessary in its sole but reasonable discretion in order to establish and maintain a valid, attached and perfected security interest in the Collateral in favor of Lender (free and clear of all other liens, claims, encumbrances and rights of third parties whatsoever, whether voluntarily or involuntarily created) to secure payment of the Liabilities, and in order to facilitate the collection of the Collateral.
>
> (Exhibit 1, Section 4.2(a))

37157312.2.doc

40.    Pursuant to Section 4.2(a) of the Loan Agreement, Plaintiff requested that Defendant immediately produce: (a) copies of all of the FTM Notes (as defined in the Loan Agreement and described in Schedule 1 of the Loan Agreement); (b) all other promissory notes, loan agreements, amendments, modifications or other documents concerning any borrowing or indebtedness of any kind with respect to any of the FTM Parties (as defined in the Loan Agreement); (c) all agreements and documents concerning any involvement of Borrower in any entity in which the FTM Parties have any ownership interest in Borrower or in any entity controlled by, controlling, or under common control with Borrower; and (d) all other documents, agreements, and instruments in connection with any of the foregoing documents.

41.    Defendant failed to comply with this request from Plaintiff.

42.    Plaintiff, through counsel, provided a second written notice of default of certain "Events of Default" under the terms of the Loan Agreement and Note by a <u>Notice of Default dated June 11, 2020 (the "Second Notice of Default")</u>, as more fully set forth therein.  A true and correct copy of the Second Notice of Default is attached hereto as Exhibit 4.

43.    Based on Plaintiff's recent discovery that Defendant was actively involved in the support and promotion of the "Tecumseh-Infinity Medical Receivables Fund, LP" (the "Tecumseh-Infinity Fund"), Plaintiff's Second Notice of Default once again directed Defendant to Sections 7.1(1) and 7.1(2) of the Loan Agreement, in which Defendant is, among other things, prohibited from engaging in any other business activities, or merging, transferring, acquiring, or consolidating with any other entity.  (See Exhibit 4, pp .3-4)

44.    Sections 7.1(1) and 7.1(2) of the Loan Agreement prohibit Defendant's engagement in business activities with any other entities, including the Tecumseh-Infinity Fund.

37157312.2.doc

45.     Defendant's active involvement with the Tecumseh-Infinity Fund is a breach of the Loan Agreement, and Plaintiff demanded that Borrower immediately cease all such involvement. (See the Tecumseh-Infinity Medical Receivables Fund, LP PowerPoint Deck, a true and correct copy of which is attached here to as Exhibit 5)

46.     Defendant is referenced throughout and its principals are specifically named on page 17 of the Tecumseh-Infinity Medical Receivables Fund, LP PowerPoint Deck.  (See Exhibit 5, p. 17)

47.     In addition to the identifying the foregoing defaults delineated above, the Second Notice of Default, renewed Plaintiff's demand for the immediately production of the requested documents and information as required under the Loan Agreement. (See Exhibit 4, p. 3)

48.     Despite Plaintiff's repeated demand, and contrary to its obligations under the Loan Documents, Defendant to date has failed to produce these documents and information to Plaintiff.

## COUNT I
## BREACH OF CONTRACT – RELIEF AT LAW

49.     Plaintiff incorporates by reference paragraphs 1 through 48 above as if fully set forth herein under this paragraph 49.

50.     The Loan Agreement and Note constitute valid and enforceable contracts.

51.     Plaintiff has fully performed its obligations pursuant to the Loan Agreement and Note.

52.     Defendant failed to fully perform its obligations pursuant to the Loan Agreement and Note and is in breach thereof as more fully set forth above.

37157312.2.doc

53.     Specifically, Defendant breached Section 4.2(a), Section 5.7, Section 6.2(1), Section 6.2(2), Section 6.2(3), Section 7.1(1), Section 7.1(2), Section 7.3, and Section 7.4 of the Loan Agreement and Paragraph 14 of the Note, as more fully described herein.

54.     Pursuant to Section 8.2 of the Loan Agreement and Section 15 of the Note, the outstanding principal amount of the Loan and all unpaid interest and other sums are now immediately due and payable under the Loan Agreement and Note.

55.     As of the date of this filing, the accelerated amount of the outstanding principal Loan amount, together with all unpaid interest due under the Loan Agreement, totals $ $14,543,824.

56.     Attorney's fees, expenses, and interest continue to accrue with respect to Defendant's liability to Plaintiff pursuant to the terms of the Loan Agreement.

57.     Pursuant to Paragraph 9.7 of the Loan Agreement and Paragraph 20 of the Note, Plaintiff is entitled to recover from Defendant all attorney's fees and costs of collection.

58.     Despite Plaintiff's written demand for prompt compliance, Defendant has refused, and continues to refuse, to honor its obligations to Plaintiff under the terms of the Loan Agreement and Note and is therefore in breach of the Loan Documents.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP, formally known as HASELECT-FTM MEDICAL RECEIVABLES LITIGATION FINANCE FUND SP, respectfully requests an order and judgment:

A.      in favor of Plaintiff and against Infinity Capital Management, Inc. finding that Infinity Capital Management, Inc. breached the Second Amended & Restated Loan Agreement

and Security Agreement, dated December 18, 2019 and the Promissory Note, dated December 18, 2019;

B.      awarding Plaintiff damages in an amount in excess of $75,000, to be proved at trial;

C.      awarding Plaintiff all accrued interest and other monies due Plaintiff per the terms of the Loan Documents;

D.      awarding Plaintiff post-judgment interest as permitted by law;

E.      awarding Plaintiff its reasonable attorneys' fees and expenses incurred in bringing this action; and

F.      granting such other and further relief that this Court deems just and equitable.

## COUNT II
## BREACH OF CONTRACT – EQUITABLE RELIEF

59.     Plaintiff incorporates by reference paragraphs 1 through 48 above as if fully set forth herein under this paragraph 59.

60.     The Loan Agreement and Note constitute valid and enforceable contracts.

61.     Plaintiff has fully performed its obligations pursuant to the Loan Agreement and Note.

62.     Defendant failed to fully perform its obligations pursuant to the Loan Agreement and Note and is in breach thereof as more fully set forth above.

63.     Specifically, Defendant breached Section 4.2(a), Section 5.7, Section 6.2(1), Section 6.2(2), Section 6.2(3), Section 7.1(1), Section 7.1(2), Section 7.3, and Section 7.4 of the Loan Agreement and Paragraph 14 of the Note, as more fully described herein.

64.     Defendant refused and failed to turnover certain documents as required under the Loan Documents and as more specifically delineated in Paragraph 32 (a) through (d) above.

13

65.     Defendant incurred indebtedness from another lender other than Plaintiff, in violation of Section 7.4 of the Loan Agreement.

66.     Defendant modified the payment terms and/or expiration dates of the FTM Notes (as defined in the Loan Agreement), in violation of Sections 7.1(1), 7.1(2). 7.3 and 7.4 of the Loan Agreement.

67.     Defendant modified the payment terms and/or expiration dates of the FTM Notes (as defined in the Loan Agreement) constituting a "change in the financial condition or in the assets or liabilities of the Borrower having a material adverse effect on the Borrower," in violation of Section 5.7 of the Loan Agreement.

68.     The foregoing defaults constitute a breach of Section 8.1(b) of the Loan Agreement and Section 14 of the Note

69.      Plaintiff has a legally protectable interest under the terms of the Loan Documents and is likely to succeed on the merits of its claims.

70.     Plaintiff has no adequate remedy at law, and will suffer irreparable and substantial injury as a result of the Defendant's actions as described herein.

71.     Monetary damages will not be sufficient to adequately compensate Plaintiff for the harm caused by Defendant's defaults.

72.     The equities and balance of hardships weigh in favor of granting injunctive relief in favor of Plaintiff and against Defendant.

73.     Pursuant to Paragraph 9.7 of the Loan Agreement and Paragraph 20 of the Note, Plaintiff is entitled to recover from Defendant all attorney's fees and costs of collection.

74.     Attorney's fees, expenses, and interest continue to accrue with respect to Defendant's liability to Plaintiff pursuant to the terms of the Loan Agreement.

75. Despite Plaintiff's written demand for prompt compliance, Defendant has refused, and continues to refuse, to honor its obligations to Plaintiff under the terms of the Loan Agreement and Note and is therefore in breach of the Loan Documents.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP, formally known as HASELECT-FTM MEDICAL RECEIVABLES LITIGATION FINANCE FUND SP, respectfully requests an order and judgment:

A. in favor of Plaintiff and against Infinity Capital Management, Inc. finding that Infinity Capital Management, Inc. breached the Second Amended & Restated Loan Agreement and Security Agreement, dated December 18, 2019 and the Promissory Note, dated December 18, 2019;

B. preliminarily and permanently restraining and enjoining, without bond, Defendant, their directors, officers, agents, servants, attorneys, employees, parent, subsidiaries, affiliates, related companies, successors and assigns, and all other persons or entities in active concert and/or participation with them who receive notice, from: (1) incurring any indebtedness from another lender other than Plaintiff; and (2) modifying the payment terms and/or expiration dates of the FTM Notes;

C. ordering Defendant to immediately turnover and produce to Plaintiff the documents more fully described herein;

D. awarding Plaintiff its reasonable attorneys' fees and expenses incurred in bringing this action; and

E. granting such other and further relief that this Court deems just and equitable.

15

## <u>COUNT III</u>
## <u>FORECLOSURE OF LIEN</u>

76.     Plaintiff incorporates by reference paragraphs 1 through 48 above as if fully set forth herein under this paragraph 76.

77.     This is an action to foreclose Plaintiff's security interest in the Collateral.

78.     The Loan Agreement and Note constitute valid and enforceable contracts.

79.     Plaintiff has fully performed its obligations pursuant to the Loan Agreement and Note.

80.     Defendant failed to fully perform its obligations pursuant to the Loan Agreement and Note and is in breach thereof as more fully set forth above.

81.     Specifically, Defendant breached Section 4.2(a), Section 5.7, Section 6.2(1), Section 6.2(2), Section 6.2(3), Section 7.1(1), Section 7.1(2), Section 7.3, and Section 7.4 of the Loan Agreement and Paragraph 14 of the Note, as more fully described herein.

82.     Defendant executed and delivered to Plaintiff a UCC-1 Financing Statement (the "UCC-1").  The UCC-1 was filed for record on February 19, 2019 with the Nevada Secretary of State as Document No. 2019005454-7.   A true and correct copy of the UCC-1 financing statement is attached hereto and incorporated herein as Exhibit 6.

83.     Based on Defendants default under the Loan Documents and Plaintiff's perfected security interest in the Collateral, Plaintiff is entitled to foreclose on its lien on the Collateral.

84.     Despite Plaintiff's written demand for prompt compliance, Defendant has refused, and continues to refuse, to honor its obligations to Plaintiff under the terms of the Loan Agreement and Note and is therefore in breach of the Loan Documents.

16

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP, formally known as HASELECT-FTM MEDICAL RECEIVABLES LITIGATION FINANCE FUND SP, respectfully requests an order and judgment:

A.      adjudicating the Plaintiff's lien on the Collateral as superior to the right, title, interest or lien of any other party to this action or any party claiming by, through, under or against any party named herein or hereafter made a party;

B.      foreclosing on all interests in the Collateral that are inferior to those prescribed in the Loan Documents;

C.      determining the amount of money due Plaintiff under the Note, including principal and accrued interest, all costs and expenditures made by Plaintiff to protect its security which is secured by the Loan Documents, all costs of these proceedings, expenses and reasonable attorneys' fees as provided in the Loan Documents and the amount of any deficiency due following any judicial sale of the Collateral;

D.      declaring that Plaintiff has a lien on the Collateral for the sum of money found to be due and owing to Plaintiff;

E.      if the sum due Plaintiff under the Loan Documents is not paid immediately, enter a Final Judgment of Foreclosure in favor of Plaintiff and against Defendant in accordance with the rules and established practices of the Court directing the Clerk of the Court to sell the Collateral to satisfy Plaintiff's lien;

F.      awarding Plaintiff its reasonable attorneys' fees and expenses incurred in bringing this action; and

G.     granting such other and further relief that this Court deems just and equitable.

Respectfully submitted,

HASELECT-MEDICAL       RECEIVABLES
LITIGATION FINANCE FUND SP, formally
known    as    HASELECT-FTM    MEDICAL
RECEIVABLES   LITIGATION   FINANCE
FUND SP

By:   */s/ Christopher S. Naveja*

Michael L. Gesas (ARDC No. 6186924)
Christopher S. Naveja (ARDC No. 6229936)
Saul Ewing Arnstein & Lehr LLP
161 N. Clark Street, Suite 4200
Chicago, Illinois 60601
Tele:  (312) 876-7100
Michael.gesas@saul.com
Christopher.naveja@saul.com

18

## NOTICE OF PUBLIC SALE OF COLLATERAL

Pursuant to Section 9-610 of the Illinois Uniform Commercial Code, the collateral described below (the "Collateral") will be sold by HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP formally, known as HASELECT-FTM MEDICAL RECEIVABLES LITIGATION FINANCE FUND SP ("Secured Party"), at a public sale on July __, 2020, at 10:00 a.m. central time, *via* encrypted Zoom video conference facilitated by the offices of Saul Ewing Arnstein & Lehr LLP.

The Collateral is owned by INFINITY CAPITAL MANAGEMENT, INC., a Nevada corporation ("Debtor"). Secured Party holds a security interest in the Collateral pursuant to a Second Amended & Restated Loan and Security Agreement dated December 18, 2019 (the "Loan Agreement"). The Collateral secures the indebtedness owed by Debtor to Secured Party.

The Collateral consists of all of Debtor's right, title, and interest in the Receivables and the Alternative Receivables, and all of its other personal property, including without limitation, all of Borrower's interest in the following, whether now owned or hereafter acquired, and wherever located, but excluding the Permitted Liens: All Goods, Inventory, Equipment, Fixtures, Accounts, General Intangibles, Instruments, Chattel Paper, Documents, Commercial Tort Claims, Investment Property, Letter of Credit Rights, Deposit Accounts, and all money, and all other property now or at any time in the future in Lender's possession (including claims and credit balances), and all proceeds (including proceeds of any insurance policies, proceeds of proceeds and claims against third parties), all products and all books and records related to any of the foregoing (as said terms are defined in the Loan Agreement).

All bids must include a twenty-five percent (25%) deposit, by wire transfer, and the balance of the successful bid price must be paid, by wire transfer, within twenty-four (24) hours after the acceptance by Secured Party, unless otherwise agreed to by Secured Party, at its sole discretion.   If a successful bidder defaults on the balance of a bid price, Secured Party may forfeit the bidder's deposit and, at Secured Party's option, sell to the next highest bidder without prejudice to or waiver of rights and remedies of Secured Party against such defaulting highest bidder.  Secured Party reserves the right to adjourn the sale by giving notice at the time of sale and in such event said sale shall be continued to such date as Secured Party may then announce without further notice or publication.  **SECURED PARTY RESERVES THE RIGHT TO CREDIT BID AT THE SALE WITHOUT THE 25 PERCENT DEPOSIT OR WIRE TRANSFER REQUIREMENTS THAT ARE REQUIRED FOR THE OTHER BIDDERS. SECURED PARTY RESERVES THE RIGHT, WITHIN 24 HOURS OF THE COMPLETION OF THE BIDDING, TO REJECT ALL BIDS.** If Secured Party accepts a bid, the applicable bidder will receive a secured party bill of sale from Secured Party in form and substance acceptable to Secured Party in its sole discretion.   Secured Party makes no representations or warranties as to the condition of the Collateral.  THE COLLATERLAL IS BEING SOLD ON AN "AS IS, WHERE IS" BASIS, WITH NO REPRESENTATIONS OR WARRANTIES (EXPRESS OR IMPLIED) RELATING TO TITLE, POSSESSION, QUIET ENJOYMENT OR THE LIKE OF ANY KIND OR NATURE WHATSOEVER IN THIS DISPOSITION.

Persons wishing further information regarding the Collateral and the public sale may contact counsel for the Secured Party:  Michael L. Gesas, Saul Ewing Arnstein & Lehr LLP, 161 N. Clark Street, Suite 4200, Chicago, Illinois 60601, Phone: 312-876-7125, email: michael.gesas@saul.com.

37162442.2

# EXHIBIT 8

| From: | Peter Kuhn |
|---|---|
| To: | Jon Porter |
| Subject: | Re: HASelect- Medical Receivables Litigation Finance Fund International SP | Investor Account Statement for August 2020 | Kuhn Trust |

Thank you.

Peter Kuhn
Office 408-363-6004
Cell 408-221-3762
Sent from my iPhone

> On Sep 22, 2020, at 8:20 AM, Jon Porter <jon@three-bell.com> wrote:
>
>  Hi Peter,
>
> If they had capacity, then yes.  All the docs were submitted properly last time.  I will check with the fund today and confirm.
>
> Best,
>
> Jon
>
> **Jon Porter**, CEO
> Three Bell Capital LLC
> Office 650.887.7203  |  Mobile 650.862.4757
> Email Jon@three-bell.com
>
> Silicon Valley  |  New York  |  San Francisco  |  Los Angeles  |  Charlotte
>
>> On Sep 21, 2020, at 12:32 PM, Peter Kuhn <peter@ibpis.com> wrote:
>>
>> Hi John
>>
>> Did I get moved to the other fund on 9/1?
>>
>> Peter Kuhn
>> CEO & Principal, IBP Insurance Services
>> email peter@ibpis.com
>> 175 Bernal Road Suite 100
>> San Jose, CA 95119

Tel 408-363-6004
Cell 408-221-3762

<image001.jpg>

<u>\<image002.png></u>

---

**From:** Peter Kuhn
**Sent:** Friday, September 18, 2020 9:42 AM
**To:** Jon Porter <jon@three-bell.com>
**Subject:** Fwd: HASelect- Medical Receivables Litigation Finance Fund International SP | Investor Account Statement for August 2020 | Kuhn Trust

 following up on this.

Did we move me over to the other fund 9/1?

Peter Kuhn
Office 408-363-6004
Cell 408-221-3762
Sent from my iPhone

Begin forwarded message:

> **From:** "investor.relations@navbackoffice.com"
> <investor.relations@navbackoffice.com>
> **Date:** September 14, 2020 at 5:10:44 PM MST
> **To:** Peter Kuhn <peter@ibpis.com>
> **Cc:** "investorservices@hedgeact.com"
> <investorservices@hedgeact.com>
> **Subject: HASelect- Medical Receivables Litigation Finance Fund International SP | Investor Account Statement for August 2020 | Kuhn Trust**



# Your Investor Statement is Ready to View

Your Investor Statement for the current period for your investment in **HASelect- Medical Receivables Litigation Finance Fund International SP** is attached and also available on NAV web portal at www.navconsulting.net.

The accompanying Disclosure Document is an integral part of your statement.

If you have any questions or comments, please contact Investor Services at investor.relations@navbackoffice.com or call 630-954-1919.

**Thank you,**
**NAV Fund Administration Group**

**ABOUT US    PRIVACY    SERVICES    ☐ LOG IN**

This is an auto-generated email. However, you may contact us by replying to this email.

Disclosure. This message is intended for the addressee only and may contain confidential or privileged information. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by replying to this message and please delete it from your computer. NAV Consulting, Inc. and reserve the right to monitor all e-mail communications through their respective networks. Internet communications may not be secure or error-free and may contain viruses in addition to being subject to possible data corruption of accidental or intentional cause. This e-mail is not and should not be construed as an offer or the solicitation of an offer to purchase or subscribe or sell or redeem any investments.

**NAV Consulting, Inc.** | 1 Trans Am Plaza Drive Suite 400, Oakbrook Terrace, IL 60181, USA

Disclosure. This message is intended for the addressee only and may contain confidential or privileged information. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by replying to this message and please delete it from your computer. NAV Group reserves the right to monitor all e-mail communications through its network. Internet communications may not be secure or error-free and may contain viruses. They may be subject to possible data corruption, accidental or on purpose. This e-mail is not and should not be construed as an offer or the solicitation of an offer to purchase or subscribe or sell or redeem any investments.