Mark V. Boennighausen (State Bar No. 142147)
mboennighausen@hopkinscarley.com
Dinah X. Ortiz (State Bar No. 273556)
dortiz@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 S First Street
San Jose, CA  95113-2406

*mailing address:*
P.O. Box 1469
San Jose, CA 95109-1469
Telephone:   (408) 286-9800
Facsimile:   (408) 998-4790

Attorneys for Defendants
THREE BELL CAPITAL LLC, and
JONATHAN PORTER

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| PETER KUHN,<br><br>            Plaintiff,<br><br>v.<br><br>THREE BELL CAPITAL LLC, a California limited liability company, JONATHAN PORTER, a Married Man, DOES 1 through V, inclusive; ABC Corporation I through V., inclusive, and XYZ Partnerships I through V, inclusive,<br><br>            Defendants. | CASE NO.  5:23-cv-02958-PCP<br><br>**DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND COUNTERCLAIM** |

Pursuant to Rule 8(b) of the Federal Rules of Civil Procedure, Defendants and Counterclaimants Three Bell Capital LLC ("Three Bell") and Jonathan Porter ("Mr. Porter") (collectively "Defendants") hereby answer this frivolous fourth attempt by Plaintiff and Counter Defendant Peter Kuhn ("Plaintiff" or "Mr. Kuhn") to plead a single claim for breach of fiduciary duty for an investment. Disturbingly, Plaintiff and his counsel know Mr. Kuhn made this investment directly with a third-party investment fund.  Additionally, Mr. Kuhn is a sophisticated investor who, it appears, already had an investment advisory relationship with UBS, through an

investment advisory group based in Walnut Creek, California named Encompass Wealth Management (https://advisors.ubs.com/encompasswealthmanagementgroup).  Indeed, as set forth in the counterclaim, Mr. Kuhn never executed an investment advisory contract with Defendants and never sent any money to Defendants to invest.  Defendants never had any control over any of Plaintiff's assets or visibility into Plaintiff's investment portfolio, and Plaintiff never paid Defendants a single cent for any alleged investment advisory services.  In fact, according to Plaintiff's repeated pleadings in this case, any communication concerning the investment at issue was "unsolicited," which confirms that even Plaintiff never believed that Defendants were his financial advisors or that they otherwise had a reason to contact him.

To the specific allegations of the Second Amended Complaint, Defendants respond as follows:

1. Answering paragraph 1, Defendants are without knowledge or information sufficient to form a belief as to the truth of each allegation contained therein and therefore deny them.

2. Answering paragraph 2, Defendants admit that Mr. Porter is a married man. Except as so admitted, Defendants deny the remaining allegations in paragraph 2.  Mr. Porter is a resident of Dallas, Texas.

3. Answering paragraph 3, Defendants admit that Three Bell Capital, LLC is a California Limited Liability Company with its main office located in Los Altos, California. Defendants further admit that Mr. Porter is a co-founder of Three Bell Capital, LLC and holds the position of Chief Executive Officer.  Except as so admitted, Defendants deny the remaining allegations in paragraph 3.

4. Answering paragraph 4, Plaintiff does not direct the allegation to Defendants so they provide no response.

5. Answering paragraph 5, as stated, Mr. Porter was at all relevant times the CEO of Three Bell.  The rest of the allegations in this paragraph are too unclear or vague to provide a response and on that basis Defendants deny them.

6. Answering paragraph 6, Defendants are without knowledge or information

sufficient to form a belief as to the truth of each allegation contained therein and therefore deny them.

7. Answering paragraph 7, Defendants are informed and believe that this case meets the federal venue rules and therefore admit.

8. Answering paragraph 8, Defendants are informed and believe that this case meets the local rules requirement for assignment to the San Jose Division of the Northern District of California and therefore admit.

9. Answering paragraph 9, Defendants admit that Three Bell is a Registered Investment Adviser ("RIA"), that currently it has 18 employees, and that its principal place of business is Los Altos, CA. Except as so admitted, Defendants deny the remaining allegations in paragraph 9.

10. Answering paragraph 10, Defendants admit that Mr. Porter is an Investment Advisor Representative ("IAR"). Except as so admitted, Defendants deny the allegations.

11. Answering paragraph 11, Defendants admit that Three Bell had $2.7 billion under management as of the date of its March 17, 2023 regulatory filing. Except as so admitted, Three Bell denies the allegation.

12. Answering paragraph 12, Defendants admit that Three Bell provides various investment advisory services to both entities and individuals, including high-net worth individuals, as well as private 401(k) plans. Except as so admitted, Three Bell denies the allegations.

13. Answering paragraph 13, Defendants admit that certain Three Bell employees, including Mr. Porter, maintain professional licenses which provide jurisdiction to certain government agencies for regulatory supervision, including the SEC. Except as so admitted, Defendants deny the allegations.

14. Answering paragraph 14, Defendants admit that the duties owed by any RIA are determined by the scope of the written agreement under which an RIA provides investment advisory services and the type of services the RIA and a client mutually agree will be performed, as well as the ability an RIA has to invest and manage a client's assets. Except as so admitted,

Defendants deny the allegations.

15. Answering paragraph 15, Defendants admit that the duties owed by any RIA are determined by the scope of the written agreement under which an RIA provides investment advisory services and the type of services the RIA and a client mutually agree will be performed, as well as the ability an RIA has to invest and manage a client's assets.  Except as so admitted, Defendants deny the allegations.

16. Answering paragraph 16, Defendants admit that the duties owed by any RIA are determined by the scope of the written agreement under which an RIA provides investment advisory services and the type of services the RIA and a client mutually agree will be performed, as well as the ability an RIA has to invest and manage a client's assets.  Except as so admitted, Defendants deny the allegations.

17. Answering paragraph 17, Defendants admit that the duties owed by any RIA are determined by the scope of the written agreement under which an RIA provides investment advisory services and the type of services the RIA and a client mutually agree will be performed, as well as the ability an RIA has to invest and manage a client's assets.  Except as so admitted, Defendants deny the allegations.

18. Answering paragraph 18, Defendants admit that Ron Filice introduced Plaintiff and Mr. Porter through a November 22, 2019 email.  In that email, Mr. Filice described Mr. Kuhn as his "great partner," and stated that he told Mr. Porter that Plaintiff was one of the "smartest guys" Mr. Filice knew and that Plaintiff's "returns on his investments are as good as it get."  Attached as Exhibit "1" is a true and correct copy of that email.  Subsequent to that email, on December 10, 2019, Plaintiff, Mr. Porter, Three Bell principal Eric Patterson, Three Bell client Mark Parelius, Mr. Filice, and Plaintiff had a dinner at Forbes Steakhouse in Los Gatos where there was a discussion of potential investment ideas, with Mr. Kuhn especially interested in medical receivable funds.  Except at so admitted, Defendants deny the allegations.

19. Answering paragraph 19, Defendants admit that as a follow-up to the December 10, 2019 dinner, Mr. Porter sent the February 25, 2019 email attached as Exhibit A to the Second Amended Complaint, which speaks for itself.  Except as so admitted, Defendants deny the

allegations.

20. Answering paragraph 20, Defendants deny the allegation, in part because the subscription agreement attached as Exhibit E to the Second Amended Complaint and executed by Plaintiff specifically lists on page 2 (Dkt. 41-5) on what basis Plaintiff is agreeing to invest, including paragraph (g) where Plaintiff specifically states he has had access to all information "necessary to evaluate the merits and risks of an investment in the fund."

21. Answering paragraph 21, Defendants admit that Three Bell provided paperwork to Plaintiff for him to open a TD Ameritrade account, which Plaintiff completed. However, Plaintiff never funded that account with any assets, let alone the funds Plaintiff used for his purchase of the investment at issue. Defendants further respond that Exhibit B and C speak for themselves. Except as so admitted, Defendants deny the allegations.

22. Answering paragraph 22, Defendants respond that Exhibit D speaks for itself. Except as so admitted, Defendants deny the allegations.

23. Answering paragraph 23, Defendants respond that Exhibit D speaks for itself. Except as so admitted, Defendants deny the allegations.

24. Answering paragraph 24, Defendants respond that Exhibit E speaks for itself. Except as so admitted, Defendants deny the allegations.

25. Answering paragraph 25, Defendants respond that Exhibit F speaks for itself. Except as so admitted, Defendants deny the allegations.

26. Answering paragraph 26, Defendants deny the allegations and in particular deny that there was any requirement of any disclosure or that there was any "conflict" to disclose.

27. Answering paragraph 27, Defendants deny the allegations. Plaintiff admitted when he signed Exhibit E that he had all the information necessary to make his investment decision. Moreover, Plaintiff did not seek specific or global investment advice from Defendants; thus Defendants never agreed to give investment advice analyzing Plaintiff's investment criteria or investment asset mix. Furthermore, Plaintiff and Defendants did not enter into an investment advisory agreement specifying the type of investment advisory services Plaintiff sought or Defendants would agree to give. Finally, when he decided to proceed with the investment,

Plaintiff disclosed that he was an "accredited investor," as that term is defined by the SEC, and that he had an existing relationship with wealth management firm UBS, from which the funds Plaintiff used to buy the investment at issue originated. Plaintiff also received a private placement memorandum issued by the fund disclosing the risks and transferability limitations on the investment.

28. Answering paragraph 28, Defendants admit, based on the same documents Plaintiff received when he decided to invest in the fund, that the fund is managed by Michael Griffin ("Mr. Griffin"). Except as so admitted, Defendants deny the allegations.

29. Answering paragraph 29, Defendants admit that Mr. Porter had professional interactions with Mr. Griffin, which in certain instances have been adversarial. One such example is an instance in which Mr. Griffin and his company threatened to sue Mr. Porter and Three Bell for advocating for customers who had invested in the investment fund, as referenced in Judge Cousins' order sanctioning Mr. Griffin's fund and his attorneys for discovery abuses. Except as so admitted, Defendants deny the allegations.

30. Answering paragraph 30, Defendants admit that some of Three Bell's clients invested in the International Fund. Except as so admitted, Defendants lack information sufficient to form a belief as to the truth of each allegation contained therein and therefore deny them.

31. Answering paragraph 31, Defendants deny the allegations. The investment fund at issue requires investments by each investor based on the information provided by the fund, as set forth in the subscription agreement attached to the Second Amended Complaint as Exhibit E and the fund's private placement memorandum, attached as Exhibit 2 to the Counterclaim. If the Plaintiff believes there were insufficient disclosures, the duty to disclose is owed by the fund to the investor, not by Defendants to determine if the fund has improperly failed to disclose any information.

32. Answering paragraph 32, Defendants admit that Mr. Porter is an investor in the fund and in the exact same situation as Plaintiff with regard to his investment. Except as so admitted, Defendants deny the allegations. The investment fund at issue requires investments by each investor based on the information provided by the fund, as set forth in the subscription

agreement attached to the Second Amended Complaint as Exhibit E. The fund has ongoing disclosure obligations as to material facts.  If the Plaintiff believes there were insufficient disclosures, the duty to disclose is owed by the fund to the investor, not by Defendants to determine if the fund has improperly failed to disclose any information.

33. Answering paragraph 33, Defendants admit that they are in compliance with Corporations Code section 260.238(k), which speaks for itself and does not require "disclosure of ownership of similar securities" by Three Bell or securities personally owned by an IAR employed by Three Bell.   Except as so admitted, Defendants deny the allegations.

34. Answering paragraph 34, Defendants deny the allegations and specifically deny that there was any duty by Mr. Porter to disclose any personal investment in the fund.

35. Answering paragraph 35, Defendants deny the allegations and specifically deny that they had any obligation to disclose Mr. Porter's personal investment to Plaintiff.

36. Answering paragraph 36, Defendants deny the allegations.

37. Answering paragraph 37, Defendants lack information sufficient to form a belief as to the truth of each allegation contained therein and therefore deny them.

38. Answering paragraph 38, Defendants lack information sufficient to form a belief as to the truth of each allegation contained therein and therefore deny them.

39. Answering paragraph 39, Defendants lack information sufficient to form a belief as to the truth of each allegation contained therein and therefore deny them.

40. Answering paragraph 40, Defendants deny the allegations.

41. Answering paragraph 41, Defendants deny the allegations.  Notably, Exhibit G is an audit report directed to the board of directors of Infinity Capital Management.  To the extent there was any requirement of disclosure by the fund, the duty to disclose was owed by the fund to Plaintiff as an investor and shareholder in the fund.

42. Answering paragraph 42, Defendants respond that Exhibit H speaks for itself. Except as so admitted, Defendants deny the allegations.

43. Answering paragraph 43, Defendants deny the allegations.  There are no facts pleaded that Defendants knew about Exhibit G or that they had access to Exhibit G.  Likewise,

there are no facts pleaded that show that there is any affirmative duty imposed on a RIA to go find documents not disclosed by an investment fund itself, let alone on behalf of an individual who directly invested in a fund with the representation that he had sufficient information to make the investment.

44. Answering paragraph 44, Defendants deny the allegations and specifically deny that they had an affirmative duty to find documents directed to a third party, which were not disclosed by the fund itself to its shareholders.

45. Answering paragraph 45, Defendants admit they had periodic calls with GAM. Except as so admitted, Defendants deny the allegations.

46. Answering paragraph 46, Defendants assert that they received the same information that GAM provided all investors in the fund, including Plaintiff.  Except as so admitted, Defendants deny the allegations.

47. Answering paragraph 47, Defendants deny the allegations.  Defendants assert that they had no duty to disbelieve information being provided to Defendants by the manager of the fund.  They also had no duty to try to discover documents which established the information was false, especially documents directed to a third party which were not disclosed by the fund to its investors.

48. Answering paragraph 48, Defendants admit that they expressed concerns about the performance fees charged by the fund. Except as so admitted, Defendants deny the allegations.

49. Answering paragraph 49, Defendants admit that Mr. Porter suggested to Mr. Griffin that the fund should charge its investors appropriate performance fees.  Except as so admitted, Defendants deny the allegations.

50. Answering paragraph 50, Defendants lack information sufficient to form a belief as to the truth of each allegation contained therein and therefore deny them.

51. Answering paragraph 51, Defendants lack information sufficient to form a belief as to the truth of each allegation contained therein and therefore deny them.  The allegation makes no sense.  As Exhibit E makes clear, the investors in the fund put their money in the fund.  The investors then became shareholders of the fund.  The fund had the investors' money, and the

subscription agreement controlled the investors' ability to get their money back. Accordingly, the allegation is nonsensical.

52. Answering paragraph 52, Defendants deny the allegations. Under the terms of the subscription agreement, the fund had an obligation to disclose material information to its investors, and whether that information was material to disclose was a decision of the fund, not Defendants. Defendants advocated for changes to the fund's behavior or fees to try to improve performance of the fund for the benefit of investors in the fund. Except as so admitted, Defendants deny the allegations.

53. Answering paragraph 53, Defendants lack information sufficient to form a belief as to the truth of each allegation contained therein and therefore deny them. What Mr. Griffin could and could not do in the fund was controlled by the fund's subscription agreements with each investor. As such, this allegation is nonsensical.

54. Answering paragraph 54, Defendants deny the allegations. Three Bell and Mr. Porter had no control over the fund or any ability to cause a "run on redemptions" since each investor's rights and remedies was controlled by each investor's respective subscription agreement with the fund.

55. Answering paragraph 55, Defendants respond that Exhibit I speaks for itself. Except as so admitted, Defendants deny the allegations.

56. Answering paragraph 56, Defendants admit that they are informed and believe that the Domestic Fund is managed by the same entity as the International Fund, which Plaintiff directly invested in through his subscription agreement. Except as so admitted, Defendants deny the allegations.

57. Answering paragraph 57, Defendants respond that Exhibit I speaks for itself. Except as so admitted, Defendants deny the allegations.

58. Answering paragraph 58, Defendants deny the allegations.

59. Answering paragraph 59, Defendants respond that Exhibit J speaks for itself. Except as so admitted, Defendants deny the allegations.

60. Answering paragraph 60, Defendants respond that Exhibit J speaks for itself.

Except as so admitted, Defendants deny the allegations.

61. Answering paragraph 61, Defendants respond that Exhibit K speaks for itself. Except as so admitted, Defendants deny the allegations.

62. Answering paragraph 62, Defendants deny the allegations.

63. Answering paragraph 63, Defendants respond that Exhibit K speaks for itself. Except as so admitted, Defendants deny the allegations.

64. Answering paragraph 64, Defendants respond that Exhibit L speaks for itself. Except as so admitted, Defendants deny the allegations.

65. Answering paragraph 65, Defendants deny the allegations. Defendants had no ability to transfer any funds to the Domestic Fund, as Plaintiff knows, pursuant to the terms of Exhibit E, which he signed and under which terms he directly invested in the investment at issue. Plaintiff also knew this pursuant to the fund disclosures he received prior to investing.

66. Answering paragraph 66, Defendants respond that Exhibit L speaks for itself. Except as so admitted, Defendants deny the allegations.

67. Answering paragraph 67, Defendants deny the allegations. They had no ability to transfer any funds to the Domestic Fund, as Plaintiff knows, pursuant to the terms of Exhibit E which he signed and under which terms he directly invested in the investment at issue.

68. Answering paragraph 68, Defendants received the same information from the manager of the fund as Plaintiff, and Plaintiff was the only one who could request a redemption. Except as so admitted, Defendants deny the allegations.

69. Answering paragraph 69, Defendants deny the allegations. Defendants received the same information from the manager of the fund as Plaintiff, and Plaintiff was the only one who could request a redemption. Except as so admitted, Defendants deny the allegations.

70. Answering paragraph 70, Defendants deny the allegations. Exhibit E provides the terms of Plaintiff's direct investment in the fund at issue, including that the investment is not liquid and that Plaintiff "may not be able to liquidate [his] investment in the Fund." Except as so admitted, Defendants deny the allegations.

71. Answering paragraph 71, Defendants admit to understanding that there is a

bankruptcy filing under the case number referenced in the allegations, that parties in the bankruptcy have made many filings, and that those documents speak for themselves.  Except as so admitted, Defendants lack information sufficient to form a belief as to the truth of each allegation contained therein and therefore deny them.

72. Answering paragraph 72, Defendants admit that they sought and obtained an order quashing a subpoena against Three Bell and awarding sanctions.  Judge Cousins' order granted the relief sought in part because the bankruptcy proceeding had nothing to do with Three Bell or Mr. Porter.  There is thus no basis to allege that Defendants have not complied with any legitimate discovery obligations.  Except as so admitted, Defendants deny the allegations.

73. Answering paragraph 73, Defendants deny the allegations.  Plaintiff has not alleged any agreement which imposes any fiduciary obligation on Defendants, and Exhibit E makes clear that Plaintiff directly invested in the Fund and agreed to receive all communications directly from the Fund.  Furthermore, Defendants are informed and believe that Plaintiff had a written investment advisory agreement with UBS.

74. Answering paragraph 74, Defendants respond that Exhibit N speaks for itself.  Except as so admitted, Defendants deny the allegations.  Plaintiff never paid any fee to Defendants for any service or executed an investment advisory agreement.

75. Answering paragraph 75, Defendants respond that Exhibit O speaks for itself.  Except as so admitted, Defendants deny the allegations.  Mr. Porter had communications with Plaintiff about his direct investment in the fund, which Defendants had no control over.  Plaintiff never executed any investment advisory agreement and never paid any money to Defendants.  Defendants hoped that Plaintiff would become a client and enter into an investment advisory relationship, but that never came to pass, and it became clear that it would not come to pass when Plaintiff refused to agree to a platform to which all other Three Bell clients agreed.

### COUNT I:    BREACH OF FIDUCIARY DUTY

76. Answering paragraph 76, Defendants reincorporate their answers to the paragraphs set forth above.

77. Answering paragraph 77, Defendants admit that the duties owed by any RIA are

determined by the scope of the written agreement under which an RIA provides investment advisory services and the type of services the RIA and a client mutually agree will be performed, as well as the ability an RIA has to invest and manage a client's assets. Except as so admitted, Defendants deny the allegations.

78. Answering paragraph 78, Defendants admit that they facilitated a direct investment in which Plaintiff decided on his own to invest, using investment funds from a UBS brokerage account, after receiving an email, which allowed Plaintiff to review information about the investment opportunity, including a private placement memorandum from the fund. Except as so admitted, Defendants deny the allegations.

79. Answering paragraph 79, Defendants admit that the duties owed by any RIA are determined by the scope of the written agreement under which an RIA provides investment advisory services and the type of services the RIA and a client mutually agree will be performed, as well as the ability an RIA has to invest and manage a client's assets. Except as so admitted, Defendants deny the allegations. Defendants specifically deny having an advisor/client relationship with Plaintiff, which would impose such duties.

80. Answering paragraph 80, Defendants deny the allegations. Plaintiff never sought and Defendants never entered into a written professional investment advisory agreement to do any suitability analysis of any investment for Plaintiff, and as Exhibit E makes clear, Plaintiff represented he was an "accredited investor" as that term is used by the SEC, had substantial assets and apparently had an existing professional relationship with UBS.

81. Answering paragraph 81, Defendants deny the allegations.

82. Answering paragraph 82, Defendants deny the allegations.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Cause of Action)

Defendants allege that the Second Amended Complaint fails to state facts sufficient to constitute any cause of action or claim against Defendants upon which relief can be granted.

//

## SECOND AFFIRMATIVE DEFENSE

### (Mutual Mistake)

Defendants believed that at some point Plaintiff might become an investment advisory client and thus facilitated Plaintiff's decision to invest in an investment fund in which some of their other clients had invested. Defendants learned through documentation Plaintiff prepared for that investment fund that Plaintiff was a sophisticated accredited investor and had a pre-existing relationship with UBS (www.ubs.com). But Plaintiff never became a customer of Defendants. Plaintiff never provided Three Bell funds to invest in the account that was set up, never compensated Three Bell for any purported investment advice or management, and never executed a written investment advisory agreement.

## THIRD AFFIRMATIVE DEFENSE

### (Failure of Condition Precedent)

Defendants allege that Plaintiff failed to satisfy a condition precedent and Plaintiff must affirmatively prove the satisfaction of conditions precedent, specifically that he entered into a written investment advisory agreement specifying that services he sought and the compensation he would pay Defendants for such services.

## FOURTH AFFIRMATIVE DEFENSE

### (Waiver and Estoppel)

Defendants allege that Plaintiff has waived and is estopped and barred from pursuing his alleged claims by not pursuing any alleged concerns about his investment with the Fund directly and failing to take action against the Fund.

## FIFTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate Damages)

Defendants allege that Plaintiff has failed or neglected to use reasonable care for protection and to minimize his losses and damages, if any, and recovery is therefore barred or proportionately reduced accordingly.

//

//

## SIXTH AFFIRMATIVE DEFENSE

### (Negligence)

Defendants allege that Plaintiff was careless and negligent in handling the matters that are alleged in the Second Amended Complaint, and that said carelessness and negligence contributed to and proximately caused any and all alleged damages that Plaintiff seeks to recover in this action.

## SEVENTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

Defendants allege that Plaintiff's claims are barred by the Doctrine of Unclean Hands.

## EIGHTH AFFIRMATIVE DEFENSE

### (No Injury or Damage)

Defendants allege that Plaintiff has not been injured or damaged as a proximate result of any act or omission by, or that are attributable to, Defendants.

## NINTH AFFIRMATIVE DEFENSE

### (Unjust Enrichment)

Defendants allege that any recovery by Plaintiff in this action would be unjust and inequitable under the circumstances of the case, as Defendants duly and properly performed all of their obligations.

## TENTH AFFIRMATIVE DEFENSE

### (Setoff)

Defendants assert their right of setoff for any payments received by Plaintiff from the investment at issue and for any non-payment of money for services Plaintiff is alleged to have sought from Defendants.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Laches)

Defendants assert the affirmative defense of laches because Plaintiff unreasonably delayed in raising the issues of which he now complains.

//

## TWELFTH AFFIRMATIVE DEFENSE

### (Statute of Limitations)

Defendants allege that the Second Amended Complaint fails in whole or in part due to the fact that the claims violate the applicable statute of limitations including, without limitation, California Code of Civil Procedure §§ 337 and 339 such that there is no cause of action or claim against Defendants upon which relief can be granted.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Right to Raise Other Affirmative Defenses)

Defendants assert the right to raise other affirmative defenses as they become ascertained.

## COUNTERCLAIM

## FIRST COUNTERCLAIM: DECLARATORY RELIEF

Defendants and Counterclaimants Three Bell Capital LLC ("Three Bell") and Jonathan Porter ("Mr. Porter") (collectively "Defendants") pleads as follows against Plaintiff and Counter Defendant Peter Kuhn ("Plaintiff" or "Mr. Kuhn").

1. Mr. Kuhn is an "accredited investor" as that term is used by the Securities and Exchange Commission ("SEC").

2. At all relevant times, Mr. Kuhn was the Chief Executive Officer and Principal of IBP Insurance Services, located at 175 Bernal Road Suite 100, San Jose, CA 95119.

3. Mr. Kuhn personally and through his trust has investable assets of more than $5 million.

4. Mr. Kuhn never signed an investment advisory agreement with Defendants.

5. Mr. Kuhn never paid Defendants any compensation for investment advisory services.

6. Defendants are informed and believe that Mr. Kuhn and/or entities he controls have a written agreement with an investment advisory group associated with the international wealth management firm UBS, through a group of advisers located in Walnut Creek, California

who market their services under the name Encompass Wealth Management[1] (hereinafter "EWM").

7. Defendants are informed and believe that at all times relevant to the issues in this action, Plaintiff and/or entities he controls (such as his trust) have assets in brokerage and other accounts operated by EWM and for which Plaintiff receives advice and pays for such advice pursuant to the terms of a written agreement.

8. Mr. Kuhn received the November 22, 2019 email attached hereto as Exhibit 1 sent by Ron Filice.

9. After receiving this email, Mr. Kuhn attended a dinner on December 10, 2019 at Forbes Steakhouse in Los Gatos with Mr. Porter, Three Bell principal Eric Patterson, Three Bell client Mark Parelius, and Ron Filice, where Mr. Kuhn expressed an interest in medical receivable investments.

10. After receiving the email attached as Exhibit A to the Second Amended Complaint on February 25, 2020, Plaintiff executed Exhibit E to the Second Amended Complaint on February 27, 2020. On Page 14 of Exhibit E, Plaintiff represented, among other things, that in making the decision to invest in the fund, "he had such knowledge and experience in financial and business matters that he or she is capable of evaluating the merits and risks of the investment."

11. On February 26, 2020, prior to deciding to invest, Plaintiff received a Private Placement Memorandum issued by the fund, which explicitly stated that his funds were locked and could not be redeemed for a period of twelve months from the date of the original investment and that any redemptions were at the fund's "discretion." Attached as Exhibit 2 is a copy of the Private Placement Memorandum.

12. Mr. Kuhn never put any assets in the "client account" he references in his Second Amended Complaint (*see, e.g.*, ¶ 21).

13. After executing Exhibit E, Mr. Kuhn instructed on February 27, 2020 that

---

[1] (https://advisors.ubs.com/encompasswealthmanagementgroup/Index.htm)

$200,000 be sent from an investment account operated by EWM. This amount was wired directly to the fund at issue according to the instructions set forth in Exhibit E. Attached as Exhibit 3 is a copy of the February 27, 2020 email where Plaintiff gave instructions to wire the money and communicated with an employee of UBS.

14. Mr. Kuhn reads and understands English.

15. At all relevant times, Mr. Kuhn received and receives currently periodic updates on his investment in the fund at issue directly from HedgeACT, and/or Griffin Capital Mgt. and/or Griffin Asset Management ("GAM").

16. On information and belief, Mr. Kuhn receives periodic updates from EWM regarding his financial affairs, including assets controlled by the trust which invested in the investment at issue.

17. Plaintiff has not sued GAM over any alleged failure to disclose anything about the fund at issue.

18. Plaintiff contends that Defendants had an obligation to disclose information, which GAM did not disclose.

19. Mr. Kuhn never sought to redeem any funds in the investment at issue until February 22, 2022.

20. On information and belief, Mr. Kuhn never sought help from EWM regarding the investment at issue.

21. On information and belief, Mr. Kuhn never discussed the investment at issue with anybody associated with EWM.

22. Plaintiff has received redemptions directly from the fund after February 22, 2022.

23. In light of the allegations of the Second Amended Complaint and this counterclaim as set forth above, there is a dispute between Defendants and Plaintiff as to the legal obligations between them, if any.

24. In light of the controversy presently pleaded, pursuant to 28 U.S. Code § 2201, Defendants may ask this Court declare the rights and other legal relations of any interested party and therefore Defendants seek such a declaration as set forth below in their prayer for relief.

# PRAYER FOR RELIEF

WHEREFORE, Defendants and Counter-Claimants pray for relief as follows:

1. That the Second Amended Complaint be dismissed in its entirety, with prejudice;

2. That Plaintiff take nothing by reason of the Second Amended Complaint;

3. That the Court declare Defendants did not assume fiduciary duties toward Plaintiff, let alone the vast alleged fiduciary duties alleged in the Second Amended Complaint;

4. That the Court declare that the claim and remedy Plaintiff seeks in the Second Amended Complaint, if any, should not be directed toward Defendants, but towards the manager of the investment fund given the legal relationship established between the fund and the Plaintiff through the subscription agreement attached as Exhibit E to the Second Amended Complaint and the disclosures provided by the fund to Plaintiff;

5. That Defendants be awarded their costs in defending this action as allowed by applicable law.

Dated: November 16, 2023

HOPKINS & CARLEY
A Law Corporation

By: */s/ Mark V. Boennighausen*
Mark V. Boennighausen
Dinah X. Ortiz
Attorneys for Defendants
THREE BELL CAPITAL LLC, and
JONATHAN PORTER